**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAURICIO LEON, | Case No. ED CV 25-2582 FMO (RAOx) |
| Plaintiff, | |
| v. | **ORDER RE: <u>EX PARTE</u> APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| KRISTI NOEM, <u>et al.</u> | |
| Defendants. | |

On September 30, 2025, Mauricio Leon ("petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against U.S. Secretary of Homeland Security, Kristi Noem; Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Pam Bondi, U.S. Attorney General; Ernesto Santacruz, Jr., Acting Director of the Los Angeles ICE Field Office; and Fereti Semaia, Warden of the Adelanto ICE Processing Center (collectively, "respondents"), seeking his immediate release from immigration custody. (<u>See</u> Dkt. 1, Petition for Writ of Habeas Corpus ("Petition") at 1-2, 7).

Together with his petition, petitioner filed an <u>Ex Parte</u> Application for a Temporary Restraining Order ("Application") seeking his immediate release pending the adjudication of his habeas petition. (<u>See</u> Dkt. 4, Application at 1, 4). Respondents filed their Opposition ("Opp.") to the Application on October 1, 2025, (Dkt. 5, Opp.), and petitioner filed a reply the next day. (Dkt. 6, Reply in Support of Application ("Reply")).

Now, having reviewed and considered all the briefing filed with respect to petitioner's Application, the court finds that oral argument is not necessary to resolve the Application, <u>see</u> Fed. R. Civ. P. 78; L. R. 7-15; <u>Willis v. Pac. Mar. Ass'n</u>, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

### **STATEMENT OF FACTS**[1]

Petitioner is a native of Mexico who has lived in the United States for more than 30 years, and resides in Southern California with his family, including his U.S. citizen daughter. (<u>See</u> Dkt. 1, Petition at ¶ 13); (Dkt. 4-1, Exh. B, Declaration of Lauren Michel Wilfong ("Wilfong Decl.") at ¶ 11). He is deaf and nonverbal. (<u>See</u> Dkt. 1, Petition at ¶ 14); (Dkt. 4-1, Exh. B, Wilfong Decl. at ¶ 4).

On October 19, 2017, the government issued petitioner a Notice to Appear, which charged him with being present in the United States without admission and therefore removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). (<u>See</u> Dkt. 6-1, Exh. E, Notice to Appear at ECF 4). However, on April 22, 2020, petitioner submitted a "Petition for U Nonimmigrant Status," which is an immigration benefit for victims of crimes. (<u>See</u> Dkt. 6-1, Exh. G, Bona Fide Determination Notice at ECF 10-11); (Dkt. 6, Reply at 1). His removal proceedings were then administratively closed on September 2, 2021, at the request of both parties. (<u>See</u> Dkt. 6-1, Exh. F, Order of Administrative Closure at ECF 7-8).

On March 1, 2024, petitioner received a Bona Fide Determination Notice in connection with his U-visa application. (<u>See</u> Dkt. 6-1, Exh. G, Bona Fide Determination Notice at ECF 10-11) ("At this time, the evidence demonstrates your petition for U nonimmigrant status is bona fide, and you warrant a favorable exercise of discretion to receive employment authorization and deferred action. Because USCIS has determined your petition is bona fide and you warrant a favorable exercise of discretion, you may be issued an employment authorization document and may be placed in deferred action."). Then, on April 11, 2025, defendant was granted deferred action

---

[1] Capitalization, quotation and alteration marks, emphasis and formatting in record citations may be altered without notation.

1  status based on his pending U-visa application.  (See Dkt. 1, Petition at ¶ 15); (Dkt. 4-1, Exh. A,

2  Employment Authorization Card) (bearing employment eligibility category "C14" and initial validity

3  date of April 11, 2025); see also 8 C.F.R. 274A.12(c)(14) (codifying employment eligibility category

4  (c)(14), which authorizes aliens who have "been granted deferred action" to apply for employment

5  authorization if the alien establishes an economic necessity for employment) (emphasis added).

6  As of September 26, 2025, there have been no hearings scheduled in petitioner's case, and the

7  immigration closure of his case was the most recent decision rendered in the case.  (See Dkt. 6-1,

8  Exh. H, EOIR Automated Case Information at ECF 13-14).

9       On September 12, 2025, despite his lawful deferred action status, petitioner was detained

10  and arrested by immigration authorities while working at a car wash in El Monte, California.

11  (See Dkt. 1, Petition at ¶¶ 17-20); (Dkt. 4-1, Exh. B, Wilfong Decl. at ¶¶ 6-8).  Petitioner, who

12  cannot speak, was unable to show immigration agents his employment authorization card, which

13  was in his pocket at the time of his arrest.  (See Dkt. 1, Petition at ¶ 18); (Dkt. 4-1, Exh. B, Wilfong

14  Decl. at ¶ 7).  He was handcuffed and taken to the Adelanto Detention Center, where he remains

15  in the custody of the respondents and is held in a room by himself within the medical unit.

16  (See Dkt. 1, Petition at ¶¶ 18, 21-22); (Dkt. 4-1, Exh. B, Wilfong Decl. at ¶¶ 7, 9).  As of the filing

17  of the Petition, petitioner had not been taken to the commissary, recreation area, or even allowed

18  to go outdoors.  (See Dkt. 1, Petition at ¶ 23); (Dkt. 4-1, Wilfong Decl. at ¶ 9).  Additionally,

19  petitioner is unable to communicate with staff at Adelanto and has not been provided with a sign

20  language interpreter.  (See Dkt. 1, Petition at ¶ 24); (Dkt. 4-1, Exh. B, Wilfong Decl. at ¶ 9).

21       Based on these allegations, petitioner argues that he is likely to succeed on the merits of

22  his habeas petition – specifically, that (1) the nature of his initial detention and arrest violated his

23  Fourth Amendment rights; (2) the nature of his continued immigration detention notwithstanding

24  his lawful deferred action status violates his Fifth Amendment rights; and (3) his isolation and lack

25  of access to an interpreter while detained violates Section 504 of the Rehabilitation Act, 29 U.S.C.

26  § 794.  (See Dkt. 4, Application at 1, 6-11).

27  / / /

28

**LEGAL STANDARD**

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions and TROs.  See Fed. R. Civ. P. 65(a) & (b).  The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction.  Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)).  The substantive standard for deciding whether to issue a preliminary injunction or TRO is the same.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same).  "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A plaintiff seeking a preliminary injunction or TRO must establish that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest.  Winter, 555 U.S. at 20, 129 S.Ct. at 374.  Under the Ninth Circuit's "'sliding scale' approach[,] . . . the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits."  Id.  The last two Winter factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009)

Rule 65(c) "invests the district court with discretion as to the amount of security required, if any[,]" for a temporary restraining order or preliminary injunction.  See Jorgensen v. Cassiday,

1   320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks omitted).  Accordingly, the court "may

2   dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the

3   defendant from enjoining his or her conduct."  Id.

4       With these standards in mind, the court now turns to the arguments raised by petitioner in

5   his Application.

6                                    **DISCUSSION**

7       Petitioner's Application raises three primary arguments:  (1) his initial detention and arrest

8   were unlawful; (2) his deferred action status, which remains in effect, bars his removal and

9   therefore makes his continued detention unlawful; and (3) his detention in medical isolation

10  violates Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  (See Dkt. 4, Application at 6-11).

11  Because the court finds petitioner's second argument to be dispositive, it limits its analysis to that

12  issue.[2]

13      A.    Likelihood of Success on the Merits

14      The government concedes that petitioner's deferred action status argument "is a much

15  stronger legal argument," because "District Courts have found that if the person cannot be

16  removed, their detention is not warranted."  (See Dkt. 5, Opp. at 2).  The government's sole

17  argument in opposition to this issue is that "Petitioner's filing d[id] not establish that he has actually

18  been granted deferred action," because petitioner did "not submit a Bona Fide Determination

19  Notice (BFD) showing he has been granted deferred action" alongside his habeas petition and

20  Application.  (See id. at 2, 7-8).  However, petitioner subsequently filed evidence of his U-visa

21  bona fide determination with his reply papers.  (See Dkt. 6, Reply at 3); (Dkt. 6-1, Exh. G, Bona

22  Fide Determination Notice at ECF 10-11).

23      The court therefore agrees with both parties that because petitioner has been granted

24  deferred action, he cannot be removed and the government lacks any legal basis for his continued

25

26      [2]  While the government argues that "the remedy for allegedly unnecessary detention during
27  removal proceedings would be to seek a bond hearing," (Dkt. 5, Opp. at 5), it does not appear to
    dispute that this court has the independent authority to order petitioner's release, particularly given
28  that respondents do not appear to have any legal basis for removing petitioner.

confinement. <u>See</u>, <u>e.g.</u>, <u>Reno v. Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 484, 119 S.Ct. 936, 944 (1999) (defining deferred action to mean that "no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated"); <u>Lee v. Holder</u>, 599 F.3d 973, 974-75 (9th Cir. 2010) (explaining that deferred action constitutes a form of interim relief that temporarily prevents removal from the United States); <u>De Sousa v. Dir. of U.S. Citizenship and Immigr. Servs.</u>, 755 F.Supp.3d 1266, 1268 (N.D. Cal. 2024) (noting that deferred action is an interim benefit that "protects [recipients] against removal from the United States"); <u>Sepulveda Ayala v. Bondi</u>, 2025 WL 2084400, *1, 7-9 (W.D. Wash. 2025) (granting preliminary injunction after finding that where petitioner had been issued a bona fide determination notice in connection with his U-visa application and granted deferred action and an employment authorization document, he had demonstrated a likelihood of success on his habeas petition claim that his deferred action status made his continued detention unlawful).

Because the government lacks any basis to continue detaining petitioner, any continued detention violates petitioner's due process rights under the Fifth Amendment. <u>See Hernandez v. Sessions</u>, 872 F.3d 976, 990 (9th Cir. 2017) ("In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint. The government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings, but any detention incidental to removal must bear a reasonable relation to its purpose.") (internal citations, quotation marks, and brackets omitted). Petitioner has therefore shown a strong likelihood of success on the merits of this issue as advanced in his habeas petition.

B.    <u>Likelihood of Irreparable Harm</u>

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting <u>Elrod v. Burns</u>, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); <u>see Hernandez v. Sessions</u>, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm

1   by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period

2   of time"). Where "the alleged deprivation of a constitutional right is involved, most courts hold that

3   no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989,

4   1001-02 (9th Cir. 2005) (internal quotation marks omitted). The court therefore finds that petitioner

5   would be immediately and irreparably harmed by the continued deprivation of his liberty in violation

6   of his deferred action status and due process rights.

7          C.    Balance of the Equities and Public Interest

8          Petitioner argues that a temporary restraining order is in the public interest, "given that

9   Petitioner seeks to protect constitutionally protected liberty" against unlawful detention, and given

10  that the burden on respondents would be minimal in comparison. (See Dkt. 4, Application at 12-

11  13). The court construes the government's failure to oppose or even address these arguments,

12  (see, generally, Dkt. 5, Opp.), as a concession that these factors weigh in petitioner's favor. See,

13  e.g., GN Resound A/S v. Callpod, Inc., 2013 WL 1190651, *5 (N.D. Cal. 2013) (construing

14  plaintiff's failure to oppose a motion as to a particular issue "as a concession that this claim

15  element [is not satisfied.]"); Hall v. Mortg. Investors Grp., 2011 WL 4374995, *5 (E.D. Cal. 2011)

16  ("[]Plaintiff does not oppose Defendants' arguments regarding the statute of limitations in his

17  Opposition. Plaintiff's failure to oppose . . . on this basis serves as a concession[.]"); Nomadix, Inc.

18  v. Guest-Tek Interactive Entertainment Ltd., 2018 WL 10612577 (C.D. Cal. 2018) ("Guest-Tek fails

19  to address the second and third Foman factors, and thus implicitly concedes that there was no bad

20  faith or a repeated failure to cure deficiencies."). Even if the government had not conceded on

21  these two factors, the court would still find in petitioner's favor given that petitioner seeks to

22  vindicate a constitutional liberty interest in the face of likely unlawful detention. See Vargas v.

23  Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly

24  and efficient administration of this country's immigration laws . . . the public has a strong interest

25  in upholding procedural protections against unlawful detention.") (internal quotation marks

26  omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it

27  would not be equitable or in the public's interest to allow the [government] . . . to violate the

28  requirements of federal law[.]") (internal quotation marks omitted).

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Ex Parte Application (Dkt. 4, Application) is **granted.**

2. Respondents shall release forthwith petitioner from immigration detention forthwith.

3. Given that the standard for granting an TRO and preliminary injunction are the same, Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7, the court shall construe petitioner's Application as an application for a preliminary injunction ("PI Application").

4. Respondents shall file their opposition to the PI Application no later than **October 13, 2025**.  Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the PI Application.

5. Petitioner shall his Reply in support of his PI Application no later than **October 16, 2025**.

6. The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the PI Application or take the PI Application under submission.

Dated this 10th day of October, 2025.


                                                    /s/
                                        Fernando M. Olguin
                                        United States District Judge